UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------X

MICHAEL REID,

    Plaintiff,

vs.

METRO NORTH RAILROAD COMPANY,

    Defendant.

---------------------------------X

**14 CV 1406**

CIVIL ACTION NO. _____

JUDGE ROMAN

FEBRUARY 28, 2014

## FEDERAL RAIL SAFETY ACT COMPLAINT

### NATURE OF ACTION

1. The plaintiff Michael Reid brings this action against the defendant for violations of his federal statutory rights under the Federal Rail Safety Act, 49 U.S.C. Section 20109.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction in this case pursuant to the Federal Railroad Safety Act, 49 U.S.C. Section 20109(d)(3) (FRSA), and 28 U.S.C. 1331. Venue is appropriate in this judicial district in that the defendant transacts business in this judicial district and acts proscribed by 49 U.S.C. § 20109 have been committed by the defendant in this judicial district. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b) & (c).

## PARTIES

3.     The plaintiff is of White Plains, New York.

4.     The defendant Metro North Railroad Company ("Metro North") is a railroad carrier providing railroad transportation, with a usual place of business in New York, New York, as well as White Plains, New York.

## FACTS

5.     During all times herein mentioned, the defendant Railroad carrier engaged in interstate commerce by providing passenger railroad transportation between the states of New York and Connecticut and New Jersey, thereby subjecting itself to the provisions and prohibitions of Section 20109 of the FRSA, 49 U.S.C. 20109.

6.     At the time of the defendant's FRSA violations, the plaintiff was employed by the defendant Railroad as a Technical Supervisor and qualified as an employee entitled to the statutory protections of 49 U.S.C. Section 20109.

7.     Metro North Railroad has a duty to provide its passengers with rail cars and engines that comply with federal safety regulations and standards. That includes a duty to put into service safe and suitable rail cars that do not present a risk of injury or death to their passengers.

8.     As a Metro North Technical Supervisor, the plaintiff Michael Reid has a safety sensitive job. He works in the Railroad's North White Plains yard and Shop facility troubleshooting problems with the passenger rail engines and cars. He is responsible to ensure that passenger cars put into service comply with federal safety regulations and standards, and his work directly and indirectly affects the safety of Metro North's passengers and workers.

9. Under the Federal Rail Safety Act, it is a protected activity for railroad employees to report hazardous safety conditions, 49 U.S.C. 20109(b)(1)(A), and to refuse to assist in the violation of any federal regulation relating to railroad safety, 49 U.S.C. 20109(a)(2), and Metro North is prohibited from taking any disciplinary or adverse actions due in whole or in part to an employee engaging in such protected activities.

10. When a Metro North electric passenger car registers a serious fault code it should not be put into passenger service until the appropriate outside vendor confirms the car is safe for passengers to use. The fault code 169 means "direct ground" and is especially serious as it confirms the car's high voltage capacitors have a high risk of exploding and injuring passengers and employees. In particular, the definition of Fault Code 169 is: "Major Capacitor Failure Imminent—Filter capacitors must be replaced! . . . This fault indicates that a sudden critical failure of the capacitor is likely. . . . Reset not possible; Shop must replace the capacitors and reset with PIU." Federal Rail Administration safety standards and regulations require that such a passenger car be shopped and not placed into revenue service until the appropriate contractor confirms it is fit for service. The safe and proper procedure to follow for equipment registering Fault Code 169 is to shop the car and call the outside contractor to inspect the capacitors and reset the fault.

11. On October 16, 2011, Croton Technician Anton Derkach found Fault Code 169 on a passenger car 4144, and directed that the car be shopped in North White Plains. In the early morning of October 17, 2011, the General Foreman at the North White Plains Shop, Allen Rossney, without the permission or knowledge of Technician Derkach or the plaintiff, reset the fault code on Car #4144 and put it into passenger service in Train #510 for the morning rush hour. This was contrary to safe practice and exposed the passengers and crew on that car to a serious risk of a high voltage capacitor explosion.

12. After learning of the situation, Reid reported this unsafe conduct and hazardous condition to his immediate supervisor, Superintendent of Technicians Koffi Afko. Instead of disciplining General Foreman Rossney, Afko tried to shift the blame onto Reid. When Reid pointed out the blame was on General Foreman Rossney for ignoring the directive of the Technician and the safe practice, Afko accused Reid of taking things "too serious," and did not take the car out of service.

13. Reid then called the Metro North Fleet Management Office to report the car and ask that it be taken out of service. When Fleet Management did not confirm that would be done, Reid called Afko's superior, Assistant Director of Technical Support Theodore Kalolekas, to report the unsafe situation and ask that the car be taken out of service. As a result of Reid's efforts, the car ultimately was taken out of service.

14. Following the Car #4144 incident, Reid was labeled as not being a "team player" and was subjected to retaliatory actions, including swearing and yelling by his immediate superior Superintendent of Technicians Afko.

15. On October 20, 2011, Reid called the Region 2 OSHA Office of Whistleblower Protection and filed a complaint regarding Metro North's response to his reporting the safety hazard and failure to follow FRA regulations. On October 21, 2011, Reid called the FRA Office in Washington, D.C., and reported the October 17th incident when Car #4144 was not shopped in violation of FRA regulations. On October 24, 2011, Reid called the Metro North Workforce Diversity Office and complained of the reaction of his superiors to his reporting of a safety hazard.

16. On Metro North, Train In Trouble Reports (TIR) note all unusual occurrences, delays, safety problems, and critical fault conditions on train equipment from the previous shift. In February 2012, when Reid reported to Superintendent Afko that several safety concerns with equipment registered in TIR reports were not being properly repaired, Afko told Reid to ignore the problems and just get the reports completed. When Reid refused to personally validate the correction of reported

equipment problems that he did not have personal knowledge were actually corrected, he was harassed for not being a "team player."

17. By the end of February 2012, Reid came under the care of a physician due to the stress created by Afko's reaction to Reid's protected activities. In early March 2012 Superintendent Afko ordered Reid to remain in his office and complete the TIRs and not to go out into the Yard. When General Foreman Rossney complained that Reid did not go out into the Yard, Afko blamed Reid for not doing so and treated him as if he was not a "team player." Shortly thereafter Reid was ordered to see the top manager in the Department and removed from service.

18. In whole or in part due to Metro North's retaliatory course of conduct based on Reid's FRSA protected activities, Reid has suffered and will suffer loss of income and benefits, as well as significant emotional distress and other compensatory damages.

## FRSA CAUSE OF ACTION

19. The plaintiff adopts by reference and re-alleges each and every allegation set forth in paragraphs 1 through 18 of this Complaint with the same force and effect as if set forth under this cause of action.

20. The plaintiff engaged in protected activity under the FRSA when he reported hazardous safety conditions pursuant to 49 U.S.C. 20109(b)(1)(A) and when he to refused to assist in the violation of any federal regulation relating to railroad safety, 49 U.S.C. 20109(a)(2).

21. The defendants had knowledge of all the protected activities referenced above.

22. The defendants took adverse or unfavorable actions against the plaintiff in whole or in part due to his protected activities when they, inter alia, retaliated against him, threatened him with discipline, and removed him from service. In so doing, the defendant Railroad acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

23. On October 20, 2011, the plaintiff filed a FRSA Complaint with the Secretary of Labor's Region 2 OSHA Whistleblower Office, within 180 days from the date of his suspension and disciplinary charge for insubordination. Plaintiff amended that Complaint on September 2, 2012.

24. The Region 2 OSHA Whistleblower Office commenced its investigation, and the plaintiff fully cooperated with OSHA's investigation. However, OSHA did not issue a final decision within 210 days after the filing of the FRSA Complaint. The delay was not due to any bad faith on the part of the plaintiff. To date, the Department of Labor has not issued a final decision regarding the plaintiff's FRSA complaint.

25. Pursuant to Section (d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in a United States district court for a de novo jury trial regarding the Railroad's violations of the FRSA. 49 U.S.C. Section 20109(d)(3). On February 3, 2014, the plaintiff served the Assistant Secretary, Associate Solicitor, Regional Administrator, and defendants with a Notice of Intent to File Original Action.

26. Pursuant to FRSA 49 U.S.C. 20109(d)(3), the plaintiff now is bringing this original action at law and equity for a de novo jury trial before the United States District Court for the Southern District of New York, which Court has jurisdiction over this FRSA action without regard to the amount in controversy.

WHEREFORE, in order to encourage employees to freely report all safety hazards and injuries without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, including but not limited to:

- expunging all references to any disciplinary comments or actions taken against the plaintiff related to the exercise of his rights under the FRSA;
- awarding all lost wages and benefits with interest;
- awarding compensatory damages for any and all emotional distress due to defendant's conduct;
- awarding compensatory special damages, including expert witness fees and attorney fees;
- reinstating the plaintiff into his management position; and
- awarding the statutory maximum of punitive damages.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

BY HIS ATTORNEY,

By: *[signature]*

Charles C. Goetsch   [CG9082]
Charles Goetsch Law Offices LLC
405 Orange Street
New Haven, CT 06511
Tel: (203) 672-1370
Fax: (203) 776-3965
charlie@whistleblower.com